IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14058-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA,

      Plaintiff,

v.


DOMINIC ANDRE ELVIR,

_____Defendant._____/


**GOVERNMENT'S EXHIBIT 2**

Transcript of Audio Recording Detention Hearing

**Participants:**

Judge:            Judge Robert M. Illman

Gloria:           Judge's clerk

Pastor:           Daniel Pastor, Assistant United States Attorney (AUSA)

Falk:             Elizabeth Falk, attorney for defendant, Dominic Elvir.

Pretrial Svs.:    Anthony [UI] Granadashed, Pretrial Services Officer

Liotta:           Michelle Liotta (mother of defendant Dominic Elvir)

Defendant:        Dominic Andre Elvir

---

0:43 / 1:06:02

| | |
|---|---|
| Gloria: | And the court will admonish all the participants that there's no recording allowed in court proceedings. And we have Judge Illman with us for that process. |
| Pastor: | Gloria, I don't know if you can hear me but I'm not able to, ah, pick up any audio from anyone right now. |
| Gloria: | OK, um, so you're not hearing me? |
| Gloria: | Could you try another process…maybe appearing by phone? |
| Gloria: | [UI] …let me let the judge know that we're not getting the AUSA's audio. |
| Gloria: | OK, um, you can go ahead and bring in the defendant, thank you. |
| Falk: | Elizabeth Falk. |
| Gloria: | Mr. Pastor do we have your audio? |
| Gloria: | Mr. Pastor I see your audio is off, if you could unmute? |
| Gloria: | Can you hear us now Mr. Pastor? |
| Pastor: | Your Honor, this is, ah, AUSA Pastor, I'm not able to hear anything on the audio, I don't know if there's anything to hear at this time? |
| Judge: | There is, um, can you, if you can't hear me then, start over. |
| Judge: | Turn off your machine…start over…I mean…turn off your Zoom and start over. |

04:17 / 1:06:02

| | |
|---|---|
| Judge: | Gloria can we send him a chat? |
| Gloria: | I'm trying your honor. |
| Falk: | Mr. Elvir can you see…hear me? Cause we see you on the Zoom. |
| Defendant: | Yes, I can hear you. |
| Falk: | OK, are, can you turn on your camera? |
| Judge: | I believe his camera is on…he's sitting…I can see him sitting, ah, in the courtroom, you just have to see, it's a small, it's a small window. |
| Falk: | I'm trying to talk about his father, who's texting me that he can't get into the Zoom, and I'm telling him I see him in the Zoom, so I'm a little confused about why he's saying he's not in the Zoom when his screen is there. |
| Judge: | OK. |
| Judge: | Yeah, ah, I believe somebody is trying to talk, but your mute is on. That's the USACANP…are you trying to talk, cause your mute is on. |
| Judge: | There we go. |
| Pastor: | Hello, your Honor, this is AUSA Pastor, can you hear me now? |
| Judge: | I can, can you hear me? |
| Pastor: | Yes, your Honor, thank you, sorry about that. |
| Judge: | All right so do we have everybody now? |
| Gloria: | I believe we do your Honor. |
| Judge: | All right…(unintelligible) |
| Gloria: | (unintelligible, your Honor, mister…sorry, I'll just let the case get called.. |
| Gloria: | Court will come to order, United States District Court for the Northern District of California, the Honorable Robert M. Illman presiding, court calls criminal case number 23-MJ70607, parties please state their appearances for the record: |
| Pastor: | Good morning your Honor, Daniel Pastor, for the United States |
| Falk: | Good morning your Honor, Elizabeth Falk, on behalf of Dominic Elvir, he is present in court, and I am proceeding by Zoom, ah, with the court's permission. |
| Anthony: | Good morning your Honor, Anthony Granadashed [?] - Pretrial Services |

9:20 / 1:06:02

Judge:    All right, good morning everyone so, um, we are proceeding by way of Zoom for ah, the attorneys and myself and, the reason why we are doing this is because, um, normally I would be in the courtroom with Mr. Elvir and despite the background behind me, ah, I am not, ah, someone in my house house has just tested positive for Covid, and so rather than putting Mr. Elvir, court staff and um, ah, the Marshalls at risk, I am proceeding by video, ah, along with the attorneys. Um, having said that, we are not broadcasting, and what I mean by that is, we are doing this by private Zoom call not by, um, ah, the webinar, and so, ah, I don't think that we run afoul of any prohibitions against the broadcasting of criminal proceedings, um, but, ah, I am going to ask Mr. Elvir for, ah, a waiver of Rule 53 just in case somebody with a bigger chair than me later on down the road decides that this is broadcasting. Um, so, um, Mr. Elvir I want you to understand that under Federal Rules of Criminal Procedure 43 and the Constitution, you have the right to be physically present at this hearing, which you are, but I am not um, and under Federal Rule of Criminal Procedure 53 there's a prohibition on the broadcasting of criminal proceedings such as this one. Do you understand these rights and voluntarily agree to waive them and proceed in this manner?

Defendant:    Yes, your honor.

Judge:    All right, does council have any objections to us proceeding in this matter?

Falk:    No, your honor.

Pastor:    No, your honor.

Judge:    Ok, all right, ah, so we are here for a few things this morning, the first is the appointment of council, um I don't have a financial affidavit, but I do know that Mr. Elvir did state, ah, his financial information to the Pretrial Services Officer, ah, that was generated in a report that was given to me, and I assume council have it as well, ah, I have reviewed the financial affidavit, excuse me, I have reviewed the financial statements made to the Pretrial Services Officer and I find he does qualify for the appointment of council, so I will appoint Miss Falk of the Federal Public Defender's Office to represent him. Ah, the other thing, the other housekeeping is, um, he did waive the Rule 5, um, Identity Hearing, and um, I did have a form prepared for that waiver, and what we did was, ah, as council know, um, there are several selections that he can waive after agreeing that he understands ah, his rights and understands that he's charged in the Southern District of Florida, and what I have pre-check marked for him to sign is just the Waiver to an Identity Hearing and Production of the Warrant. Um, Ms. Falk, ah, is that correct as you understand it?

12:58 / 1:06:02

| | |
|---|---|
| Falk: | Yes, your Honor, there's no issue as to his identity. |
| Judge: | OK, so then I am going to, um, well the other part of it is that I Consent to the Issuance of an Order Requiring my Appearance in the Prosecuting District where the Charges are Pending Against Me. Um, that order would either be, either him in custody or not in custody, but regardless, there's an order that requires him to appear, um, so is there any problem with him signing that Rule 5, Waiver of Rule 5 Hearings? |
| Falk: | No, your honor, it's just…chaotic…stop moving [unintelligible] um, I would hope, I would ask the court to hold off on signing the removal order itself until we resolve the detention issue because it does cause confusion for the Marshall's Service um, and I guess we'll kind of get to that at the end of the hearing what's going to happen if the court orders release, but for example, the court is going to order release and the government is going to appeal; um, a lot of times that appeal, the defendant will stay in this district while that appeal is pending. Um, and if the order is entered, the Marshall Service can get confused about whether they should remove him, or not remove him, and so that's my only concern about that is the timing that your honor signs it. I don't have any problem with him signing it, um, but I would ask the court wait until we fully resolve the detention matter. |
| Judge: | (unintelligible) OK, well, I'm going to have a (unintelligible)…go ahead Mr…. |
| Pastor: | I apologize your honor; I did just want to add that I did just (unintelligible) from the AUSA in Florida that they will (unintelligible)… |
| Judge: | Sorry, sorry, hang on just a second, just a second, just a second, um, ah, to anybody who's typing on their computer, when you type, the audio then gets sucked into the typing, and so I couldn't hear what Mr. Pastor, we just lost his audio, so Mr. Pastor if you'll, if you'll start again? |
| Pastor: | Your honor, ah, I apologize for interrupting, I just wanted to add that my understanding from the AUSA in Florida is that if there were to be a release order he has requested that I seek a stay to allow him to appeal that in the district um, in Florida. |
| Judge: | OK, all right, so then are there any other housekeeping matters that we need to um, take up before we get into the detention hearing? |
| Judge: | Alright then, um, this is not a, um, presumption case if I understand that correctly, is that the government's understanding as well? |
| Pastor: | I believe that… (unintelligible) |

15:34 / 1:06:02

| | |
|---|---|
| Judge: | All right, then we'll proceed on your Motion. |

Pastor:     Um, your Honor, the government continues to seek detention in this matter, um, based upon the serious risk of flight in this case. Um, I believe there was a proffer at the previous hearing with my colleague AUSA [unintelligible].  The government's principal concern in this matter is that the defendant was living in the district of Florida; he has active state warrants there as far as I understand it, he has some probation violations that occurred, and then he left that district, absconded and appears to have been living in Northern California since that time. Ah, it appears to me from the, what I've seen, um, and the information that's been given to me that his mother was aware, um, of those state probation violation, um, and ah, knew that he had absconded, so the government continues to think there's a serious risk of flight here. At the time that the defendant absconded, I don't believe that he was aware of the now pending federal charge against him for felony possession of a firearm, um, and so now he knows he facing that charge as well as well as the state warrants um, that he has against him, so the government believes that there's a serious risk of flight in this case, ah, and doesn't believe the defendant can be relied upon to return to Florida and face these charges, ah, and seeks that he be detained and transferred back, ah, to Florida to face, ah, the pending federal charge there.

Pastor:     Your Honor, I would add just on the issue of, um, this defendants conduct, my understanding from the AUSA's in Florida is that the defendant is charged with felony possession of a firearm, but was also involved in a firearm trafficking ah, scheme that involved the transfer of large numbers of firearms from the United States to Ecuador over a period of 6 to 8 months, but the charge here is felony possession of a firearm. Ah, I only mention this other conduct because it's part of the investigation and goes to some of the concerns that the AUSA's in Florida have about this particular defendant.

Judge:     All right.  Miss Falk?

Falk:     Thank you your Honor, we would ask the court honor the Pretrial Services recommendation here, and release, um, Mr. Elvir. Um, we do have a secured bond in this case, which we are happy to affect. Pretrial didn't even recommend a secured bond in this matter, um, but it goes to, ah, to show the level of dedication and belief that this family has in Mr. Elvir, who has substantially changed his life since his decision to leave Florida.

18:35 / 1:06:02

The decision was not admirable, however at the time he left he was addicted to drugs, he was in a very bad state, and since that time he has managed to really turn things around, become full-time employed, stay clean, go to meetings, um, renew his ties with his family, and is really, um, a completely different person than he was. He has a dearth of a criminal record, um, he was, has never been to prison, has never really spent any substantial time in custody. Um, he's got some marijuana priors, and a burglary um, prior, of which it's not exactly clear to me what the circumstances are for that, but, he wasn't on probation for a significant felony, no history of violence, no history of firearms. I did speak to the AUSA in Florida about this charge, and I asked if he was arrested in possession of a firearm on this state and the AUSA said "no". So, this isn't like, he was pulled over in a car with a firearm, the officers found it, somehow it evaded notice of his probation officer, and he was never, um, brought to court for it – um, he wasn't even arrested with a firearm, so it's confusing to me, it's confusing to Mr. Elvir, we're really in the dark about what these charges are about – um, the firearms trafficking, that is a complete shock to him, um, so, I'm not, I know (unintelligible) understand the jury, the Grand Jury found probable cause, and so, you know, that is what it is, the weight of the evidence is the least important factor but as far as his dangerousness I don't think anyone has ever seen him carrying a firearm and there's nothing in his record to suggest that. Um, so I do believe that the conditions fashioned by Pretrial would secure his appearance in Florida; um, he does have a lot of support to face these charges at this time.

Judge:          You know, the dangerousness to the community is, as I understand it, not necessarily what the government's concern is, it's really more of the flight risk, um, I mean he's on probation in Florida, and then comes to the opposite side of the country, and while he may have turned his life around while here, he still never contacted his probation officer in Florida and told him, hey I've turned my life around, but I need to deal with the charges there, my violations of probation were updated, an address, or anything like that. Right, I mean he still, over the last couple of years, every day, was absconding, correct?

Falk:          Well, I do believe he had an intent to eventually work this out, when he had the resources saved up to do so, and your honor this is, the issue is whether conditions can be fashioned that will secure his appearance now, and there's certainly the existence of a secured bond, the risk of his mother's home if he doesn't appear in court - that's a very substantial, um, condition that I think given, you know, his awareness now of the federal charges and the fact that he has to deal with this in Florida, coupled with the risk to his mother's house would certainly guarantee his appearance.

21:50 / 1:06:02

Judge:      What about the, he's got two, as I understand it, two warrants in state court. One on a state violation of felony possession, which I have no idea whether that's related to this, or something completely separate, as well as the probation violation. So, um, if I order him released, the Marshalls will contact Florida and they can put a hold on him and, this is depending upon whatever happens with the Florida court, and they could either come get him, or they could wait for him to get off the airplane to show up for his Florida appearance, and then pick him up when he's there in Florida, and then any time that he spends in state custody doesn't count towards anything related to any sentence he may get in federal custody – that doesn't concern you?

Falk:       Um, so your Honor, I do have an attorney who represented him in the state matter on the probation hold, who has been in contact with me and I've been in contact with the probation officer assigned to this matter, um, who told me to contact the State Attorney's Office, which I've not had any success getting anybody there to call me back about this, but he, he did say he'd be amenable to arranging a court date for him - I mean it's a probation violation on a relatively small charge, um, I'm not sure what the courts talking about, about the warrant for a felon in possession, um…

Judge:      It's in the um, probation…or for the Pretrial Services, so there were two different, um, warrants on the state court and maybe we can hear from Pretrial as to that.

Pretrial Svs.:   Yes, good morning, thank you, your Honor, ah, I've reviewed the record prior to court today, and it does appear there are two 'no bail' warrants from Florida as your honor indicated one is for possession of a firearm, and the other one is for Burglary and Grand Theft. They are listed as 'full extradition', meaning that Florida could come and pick him up if he was ordered released on this case. As your Honor indicated, the Marshalls would contact Florida if he's ordered released, and typically they would have 5 days to come get him or make some other arrangements.

Judge:      [unintelligible]…they could pick him up at the airport or while he's either walking into or out of federal court because they'll know when he's scheduled to do that as well right?

Pretrial Svs.   That's correct, your Honor.

24:29 / 1:06:02

Falk:              What's the date on the warrant for the felon in possession…I just see it listed in a…[unintelligible] is that this case?

Pretrial Svs.:    Ah, the date of the warrant is listed as October 13, 2021.

Falk:              [unintelligible]…I mean, so again, I'm a little bit, so that, that particular warrant, is that a probation violation? Because it doesn't look to me like he's on probation, I mean I just got this report this morning, so, um, I really can't speak to the state court, the one I talked to the US attorney's office in Florida - they told me that there was no arrest relating to the federal charge. So that surprises me. Now I can't hear anybody. I can't hear you, your Honor

Judge:            (Unintelligible)…

Falk:              Oh there you go. Now I can hear you. Um, So I mean, I can't, I don't have any documentation about what that's about, it's sort of surprising because he was out here I think at the time, so I don't know how that could even be possible.

Judge:            There are, right now, as it stands, two no bail warrants, one related to the burglary, and one related to a felon in possession, which again I don't even know if that is from the same conduct that led to the warrant and indictment in this case. I mean that could be a completely different thing, but that again, um, they could simply arrest him on those warrants, plus revoke his probation and arrest him on his way to or from the courthouse, even if he is released and shows up on his own, or, they could put the hold on him for 5 days and then, and then, come, you know, make sure, ah, extradite him to Florida as well.

Falk:              Well, your honor, if that's the issue, one thing, if the court orders release and we get him information that they're coming, the court can put the hold back on him. I mean I just have a hard time believing they're gonna send somebody 3000 miles across the country to extradite him. Certainly not on a probation violation. Um…

Judge:            That's fine, I mean that's obviously up to you guys, I mean as long as he's aware of how the time gets calculated, that's not necessarily my concern. My concern with him is that he was on probation, um, he had issues that led to two warrants as well as this federal warrant, so two state warrants, and this federal warrant, and then moved to the other side of the country, um, and his family was aware

27:38 / 1:06:02

|          | of, ah, these warrants and him being in violation of probation - then that's concerning as well. |
|----------|----------|
| Falk:    | So I'm not, as Mr. Avira is shaking his head, I don't think that the family knew that there were warrants. I don't think… |
| Judge:   | [Unintelligible]…they didn't know he was on probation? |
| Falk:    | They fact that they knew he was on probation, does not mean that anybody showed up at their door saying, 'where's your son' and that is a very different thing. That, my understanding from both the parents, did not happen. And I think they're on the Zoom to explain that. I certainly think now, if we are to post his mother's home, there is no way that the Mr. Elvir who is now before the court – clean, sober, working, motivated to do right, given the record that he has, which is not that severe, is gonna avoid these charges. I just don't see it - he's got too much support. |
| Judge:   | Why would you say that when he's been avoiding his state probation while clean and sober for the last two years, that doesn't, that doesn't seem consistent. |
| Falk:    | Because his mom's house is gonna be on the line - that's huge factor. |
| Judge:   | So, OK, so, but by his own, under his own actions, I mean, he's not willing to abide by court orders, he's not willing to abide by the terms of his probation, it's just if we put his mom's house up…then… |
| Falk:    | That's not, that's not right, he's clean now. |
| Judge:   | But he's been clean… |
| Falk:    | That's right, he's been clean… |
| Judge:   | For how long? |
| Falk:    | For a year and a half… |
| Judge:   | But during that year and a half, or a year, did he contact Florida and say I know I'm in violin violation of my probation, this is where I am, what do I need to do? |

29:32 / 1:06:02

Falk:    He didn't, but that doesn't mean he's not going to show up for court now. I don't see the two things as analogous. They're not. One thing is a probation violation on a drug case, right? where you're cleaning up, you're getting your stuff together, and you wanna present as a successful person. This is now, is he gonna show up to federal court, where everyone knows where he is, where his family is on the Zoom, his family is gonna sign on a bond, his family's gonna put up a house. I mean, very few people don't show up to court, let's be honest. Very few people flee - in 20 years I've had one client flee, and especially when there is a secured bond. You would basically have to say this changed man has no regard for his mother's well-being at all, and I don't think the record is there for that.

I think the court…Pretrial Services did the risk assessment - they recommended release. I think the court should agree with that. He has too much support- if he was here with no sureties, if his families had said, you know what, we really just kind of wrote him off, and we didn't know where he was, like, we haven't talked to him about being a changed person - that's a different scenario, but this is the family that is enveloping and sheltering him, and will do so, and steer, steer him through this court process in Florida. It's not like he doesn't have anyone in Florida. Ordinarily under Rule 5's we're asking for release to California, when the courts miles away. That's not even what we're asking here. We're asking the court to release him so he can go live right by the charges where he's being charged. This is the single most important decision in this case for Mr. Elvira. Release. This will dictate, this will change the course of the case. And sometimes I can't give people up [UI], that don't have the support - but he does.

Judge:   Let me ask you with regard to… to living with his mother. Was she aware that he was on probation in Florida?

Falk:    She was aware that he was on probation. She was not aware that he was on warrant status.

Judge:   So in other words…

Falk:    So she-- so look

Judge    She wasn't aware that he had absconded.

Falk:    She didn't know if it was over. If-- if-- what had happened, is my understanding. But, I mean, she can speak for herself about that.

32:12 / 1:06:02

Judge:          Let's ask her about that.

Falk:           I think she was aware that--

Liotta:         I'm here.

Judge:          Would you state your name for the record, please?

Liotta:         My name is Michelle Liotta.

Judge:          Hi Ms. Liotta. So, I wanted to find out, were you aware that your son was on probation while he was there in Florida?

Liotta:         I was aware he was on probation. I was not involved in, you know, speaking with his probation officer, involved in what was going on at all with the probation officer. When Dominic decided to leave, I was… I was not aware. He did not tell me. I didn't find out 'til later. And uh… yeah, that's it. Yeah, I was aware. I just didn't find out 'til later that he left. I wasn't aware that he was leaving.

Judge:          Did you know that he wasn't allowed to leave?

Liotta:         No, that I didn't know. I never talked to the probation officer. I just heard through my dad that he was on probation. I wasn't involved in talking to them or anything like that.

Judge:          And you… Did you-- did you sign as a surety on his bond. Are you aware that if he doesn't show up, that the Government come after you for the, uh… for the amount of the bond?

Liotta:         Yes, I am aware.

Judge:          So, they can come after you for the entirety of it, not just half of it. They can come after you for the entirety of it. Are you aware of that?

Liotta:         Yeah, I'm fully aware, and the only reason why I'm agreeing to that is 'cause I believe he has changed. You know. He's made strides. He's a different person now, and that's the only reason why I'm agreeing. I'm fully aware.

33:48 / 1:06:02

Judge        [UI] Then if they put up your house, then they can move to… to get that money out of your house.

Liotta:      Uh-huh.

Judge:       I mean, that's a big deal, right? So if he walks away, uhm… or violates the terms of this probation, you can end up without a house.

Liotta:      I understand that.

Judge:       And you're still willing to do that?

Liotta:      Well he's … he's a different person now. I don't believe that he's the same person that he was when he left a couple of years ago. He's completely different.

Judge:       Does it bother you, when I'm talking this morning, and explaining that, even though he's been a different person, he still hasn't contacted his probation officer, as of today, to tell his probation officer in Florida where he is. In other words, he's… he's been violating continuously every day since he left Florida. I mean, that doesn't bother you at all?

Liotta:      In what sense?

Judge:       Well you know, if you're concerned about whether or not he can do what he's required to do, that the most recent history that we have in front of us today, is that, up until he was arrested on this warrant, he was continuously, uh… violating the terms of his probation, so his .. his most recent history is as a violator of the terms of his probation, so I want to make sure you're understanding, that when you say he's changed, he still hasn't made himself available to the probation office in Florida.

Liotta:      Oh yeah, that I understand, and it definitely bothers me, and I was encouraging him to contact them, and I … like uh.. the Public Defender has said earlier, he was just waiting 'til he have enough resources, because he would have to pay to come back here [UI] to deal with that. His plan wasn't to stay away forever. He did plan to come back.

Judge:       And you didn't know anything about the other warrant out for his arrest?

35:57 / 1:06:02

| | |
|---|---|
| Liotta: | Not at all. And I couldn't even… I started googling. I couldn't find anything. There's really not a whole lot of details on it. I know; I wasn't aware at all. I was shocked. Shocked to see it. [UI] what I found online… |
| Judge: | Mr. Pastor after hearing the uh… from the surety, uhm… Do you have any uh… change in your position, and uh… with regard to whether or not you think that this would reasonably assure his appearance uh … in Florida? |
| Pastor: | No, Your Honor, we don't. My information, which I received from the AUSA's in Florida, is that Mr. Elvir did speak to his mother, tell her that he had tested positive during a drug test, and that he wasn't going to prison, and then thereafter he had absconded. So that's all I can offer based on the information that I have. |
| Judge: | Um, do you mean that…when he was in Florida [UI] |
| Pastor: | I'm sorry, I didn't hear what you said, Your Honor. |
| Judge: | When he was in Florida he contacted his mother, told her he had tested positive, uhm… and then left. |
| Pastor: | That he would not going to prison, and then-- |
| Judge: | I see. I see. Okay. |
| Pastor: | From a probation officer who spoke with the mother, but uh.. that's just based on what I've seen, your Honor. |
| Liotta: | Yeah, he told me that after, not before he left. You know. That was after, when we couldn't find him and everything. |
| Judge: | So, what I'm going to do is uhm…. I'm going to uhm… release him, order him released on the, uh… secured bond, so um, I believe Mr. Taylor is in the courtroom, and so what I'll need you to do is modify the bond that you have a copy of, from the unsecured to secured, and then in the section "secured by" I want you to list the uhm… the address of 245 NW 40 Ave., in Delray Beach, uhm… as the secured portion, uhm… and then what I want you to do is print that out, and uhm… put a copy of that in uh [UI] Mr. Elvir so that I can go over the |

38:55 / 1:06:02

|  | conditions of release and appearance. When I go over those conditions of release, uhm… Ms. Liotta, I want you to listen to the conditions of release, because I'm going to ask you at the end if you understand all of them, and then I'm going to ask you if I can electronically sign uhm… on your behalf the uh… the… the third party surety uhm, portions of this, and I'm going to make sure you're still comfortable with it after hearing all the conditions that we're going to impose on him. Do you understand that, Ms. Liotta? |
|---|---|
| Liotta: | Yes, I understand, thank you. |
| Judge: | And then, uhm, and then the government can, can make their motion and all that kind of fun stuff after that, ok? |
| Pastor: | Thank you, your Honor. |
| Judge: | All right, so, uhm, I'm going to have my law clerk print that out and get it in front of Mr. Elvir so he can read along with us in real time. Um, Counsel do you guys have copies of, uhm, the, you know, the bond forms so that you can read along with me as well and make any corrections to what I might say? |
| Falk: | Uhm, not in this particular case, but I have a blank one that I…yes, yes I do. |
| Judge: | The additions that were presented by Pretrial Services were that he would not travel outside the Southern District of Florida, uhm, and then I'll put except to travel to and from the Northern District of California for any required court appearances. Uhm, that will be the only, um, additional condition that I'll put on here. Uhm, but it will be that he will reside at, uhm, the Delray Beach, Florida address. |
| Falk: | OK. |
| Judge: | And the Pretrial Services officer you'll follow along as well and make sure I get everything, all the boxes checked? |
| Pretrial Svs: | Yes, your Honor. |
| Judge: | OK |

41:12 / 1:06:02

| | |
|---|---|
| Judge: | Uhm, with regard to…let me ask Pretrial Services, with regard to the, the third party surety form that we have separate than the surety signature on the initial form, uhm, "I consent to all future orders of the court permitting for whatever reason the defendant travel outside the northern"…ok that has to do with this…Ms. Steeson [UI] while we're doing all this, can you find out, do I need to put in here the date and time of next appearance, or do we need to just put in here, uhm, what date do we need to give, I guess, for the Southern District of Florida, does the US Attorney's office have that? |
| Pastor: | I don't have a future date, your Honor, uhm, I think that hasn't been determined pending the outcome of this proceeding. |
| Judge: | [UI]..so…with regard to the form itself, when I'm ordering him to appear, the date and time of next appearance, leave that blank? |
| Pastor: | I think that's the best course for now, your Honor… |
| Judge: | OK |
| Pastor: | We will forward as soon as we have a new date set. |
| Falk: | Your Honor, I'm supposed to be in Judge Briar…I'm just making sure everybody knows that…no problem, this is… |
| Judge: | Judge Briar…[UI] |
| Judge: | Um, while we're doing this, Miss, ah, Liotta, I'm going to need your phone number, umm, for this form, so will you provide, umm, the best phone number for you? |
| Liotta: | Sure, your Honor, its 954-821-7855 [UI] |
| Judge: | Ms. Stinson did you get that? |
| Gloria: | I missed a couple of digits your Honor, if she could repeat the first digits? |
| Liotta: | 954 – that's the area code…821..you got that?...17855 |
| Gloria: | OK so let me repeat it to you please…954-811-7855 |

44:01 / 1:06:02

| | |
|---|---|
| Liotta: | No, 821-7855 |
| Gloria: | Thank you. 954-821-7855 |
| Liotta: | You got it -thanks. |
| Gloria: | Thank you. |
| Judge: | And I believe the bond form, I'd also need Mr. Elvir's uhm, the defendant's telephone number also. |
| Defendant: | It's 954-405-6673 your Honor. |
| Judge: | All right. And Ms. Stinson [UI] if you could have Mr. Taylor hand write that into the form, um… and then just let me know when Mr. Taylor has that in front of him. |
| Gloria: | OK thank you, your Honor. |
| Falk: | Uha, Dan? Uhm, do you have any idea if the secured bond is gonna make a difference to the AUSA in Florida? Are you open to me calling him directly after this? |
| Pastor: | Uhm, my understanding is that it won't, but yeah, I'm happy to speak to him with you, uhm, I think he's, ah, tied up in a meeting, but we may be able to talk to him within the next hour or so. |
| Falk: | OK, great, I just also wanna get some logistics. You you don't have any logistics information about like who would…this is assigned to a "DJ" right, since it's an indictment? |
| Pastor: | Yes, I, I, don't know the District Court judge but, uhm, we should be able to figure that out from the indictment. |
| Falk: | OK. |

45:59 1:06:02

| | |
|---|---|
| Judge: | It's a, I believe, uhm, up in the upper right hand corner, as, uh, telephone, where all the telephone number portions are for both defendant and, um, Ms. Liotta. |
| Gloria: | OK thank you, your Honor. |
| Judge: | And then while that's happening, um, we have the Rule 5 which is not the, um, what's it called, the, um, Removal Order, just the identity portion of it…ah, if you can put that in front of him as well. |
| Gloria: | Yes, your Honor. |
| Judge: | Ah, and Miss Falk, is it, ah, would it be better to waive on the arraignment until he is in Florida then? |
| Falk: | We would waive any arraignment in this district to the extent the rules require it, I think it's better for him to be arraigned with the attorney who's gonna be representing him in the case. |
| Judge: | It's a, I see, ah, someone has entered the waiting room, do you believe that's for the 11:00 o'clock hearing that I have? I mean, is anybody expecting anybody else in this proceeding? OK, alright then, I will not admit them. |
| UF: | Uh, I, my daughter was gonna come on the preceding, I don't know if it's her… |
| Gloria: | I believe that's counsel on the next matter your honor, I'll send an e-mail. |
| Judge: | OK. |
| Judge: | All right, Mr. Elvir, can you hear me? |
| Defendant: | Yes, your Honor. |
| Judge: | All right, and you don't have a copy of that bond form in front of you, do you? |
| Defendant: | I do, your honor. |
| Judge: | You do have it in front of you now? |
| Defendant: | Yes, I do. |

55:20 / 1:06:02

Judge:          Oh, all right, um, all right, you see, um, ah, you can read along with me on the conditions of release and appearance, do you see check marks anywhere?

Defendant:      Yeah, little x's…

Judge:          OK, um, ah, so with regard to the 'secured by' let me ask counsel, is it going to be $50,000 dollars secured by, the um, the ah, the address, the Delray address, is that, is the $50,000 dollars, OK, so Mr. Elvir, will you put in the $50,000 dollars on the, where it says amount of bond, should be unsecured, I'm sorry, it should be check-marked 'secured by', do you see that?

Defendant:      Yes, your Honor.

Judge:          All right, make sure that's check-marked, and the $50,000 dollars, and then underneath that, um, ah, that you'll have that address, the Delray Beach Florida address?

Judge:          [UI]…all correct down there, or are you…

Defendant:      Yes, it just, it just says, it just says the address.

Judge:          OK, that's fine. Um, all right, and is that the $50,000 dollars there?

Defendant:      No.

Judge:          OK,  write that in……….and then tell me when you're done.

Judge:          Is it ready?

Defendant:      Yes.

Judge:          OK, all right, so you're subject to each condition that is checked. So the first box is checked, you must appear at all proceedings as ordered by the court, and must surrender for service of any sentence imposed. You must not commit any federal state or local crime. You must not harass, threaten, intimidate, injure, tamper with or retaliate against any witness, victim, informant, juror or officer of the court or obstruct any criminal investigation. You must submit to supervision by Pretrial Services and must report immediately upon release and thereafter as directed by Pretrial Services.  You must surrender all passports and other

59:08 / 1:06:02

|  | travel documents to Pretrial Services. When can you have that done? Do you have a passport? |
|---|---|
| Defendant: | No, your Honor. |
| Judge: | All right. You must not possess any firearm, destructive device or other dangerous weapon. Now, with regard to that Miss Liotta, do you have firearms in your house? |
| Liotta: | Um…I have one. |
| Judge: | All right, and are you willing to remove that firearm? |
| Liotta: | Yes. |
| Judge: | (UI)…so he may reside there with you? |
| Liotta: | No problem. |
| Judge: | And you'll have to have that out of the house before he, um, enters, and you must also allow Pretrial Services to come in and look around in your house, do you understand that too as well…to make sure it's suitable? |
| Liotta: | No problem, yeah. |
| Judge: | (UI)…excuse me, Mr. Elvir you must not use alcohol to excess and must not use or possess any narcotic or any controlled substances without a legal prescription do you understand that? |
| Defendant: | Yes. |
| Judge: | Now, in California you can have prescription for marijuana, but that is prohibited under federal law, so even if you have a prescription for marijuana you may not use marijuana while you are on this, um, bond, do you understand that? |
| Defendant: | Yes, your Honor. |
| Judge: | OK. Ah, you must submit to drug and or alcohol testing as directed by Pretrial Services.  You must participate in substance abuse treatment, um, on an |

59:31 / 1:06:02

|  | outpatient or residential basis as directed by Pretrial Services. You must participate in mental health treatment as directed by Pretrial Services. You must not change residence or telephone number without prior approval of Pretrial Services, so if you and your mom aren't getting along, it doesn't matter, you can't leave, unless and until you've gotten the approval of Pretrial Services, do you understand that? |
|---|---|
| Defendant: | Yes. |
| Judge: | You must also follow, ah, follow, special condition, which is, that you're not allowed to travel outside the Southern District of Florida except to travel to and from the Northern District of California for any required court appearances. That means you can't come back here to see friends, or your girlfriend, or anything like that, um, you've gotta stay in the Southern District of Florida once you travel to there…unless the Northern District court of California wants you back here for court - do you understand that? |
| Defendant: | Yes, your Honor. |
| Judge: | And Miss Liotta you've been able to hear all this and follow along? |
| Liotta: | Yes, I have, I've been taking notes. |
| Judge: | All right, I'm going to, ah, ah, give you guys the consequences of defendant's failure to obey conditions of release and appearance:  if the defendant does not obey these conditions of release and appearance, payment of the full amount of this bond, which is $50,000 dollars, will be due, and all cash or property posted to secure it will be forfeited. Judgment may be entered and executed against defendant and all sureties or co-signers, jointly and severally. An arrest warrant for the defendant will shall issue immediately and the defendant may be detained without bail for the rest of the proceedings. Defendant will be subject to consecutive sentences and fines for failure to appear and or for committing an offense while on release. Ah, do you understand all of that Mr. Elvir? |
| Defendant: | Yes, your Honor. |
| Judge: | Mr. Elvir, do you understand that if you do not show up in Florida, that the government can go after your mom's house? |

1:01:29 / 1:06:02

Defendant:      Yes, your Honor.

Judge:          Do you understand that if you violate a bunch of terms of these conditions
                you're putting her at risk as well?

Defendant:      I do.

Judge:          You're going to show up in Florida correct?

Defendant:      Yeah, I would never do that to my mother, your Honor.

Judge:          Any you're gonna contact Pretrial Services immediately if you're released as well
                correct?

Defendant:      Yes, that's correct…

Judge:          And your gonna stay in contact with them about your travel plans, you're gonna
                contact the Pretrial Services officer that's assigned to you in Florida, and you're
                gonna do everything they tell you?

Defendant:      Yes, your Honor. I'm willing…I wanna do everything that I need to do so that I
                can get this resolved.

Judge:          I don't, I don't wanna put your mom at risk, ok?

Judge:          And so…

Defendant:      Neither do I.

Judge:          OK. All right, so Miss Elvir, after hearing all of that - you still willing to serve as
                surety?

Liotta:         Yes, I am.

Judge:          And do I have your permission to electronically sign your name to this surety ah,
                section of this bond?

Liotta:         Yes.

1:02:22 / 1:06:02

Judge:      And as a third-party surety on the bail bond in this case, you consent to all future orders of the court permitting, for whatever reason, the defendant to travel outside the Northern District of California, that's to go to, um, Florida, or to modify, supplement or delete defendants conditions of release as the court deems necessary? So in other words if there are changes to it, you consent to those changes?

Liotta:     Yes.

Judge:      And you consent to the entry of such orders without further notice to you?

Liotta:     Say that again?

Judge:      You consent to the entry of such orders without any further notice to you?

Liotta:     Yes.

Judge:      And you understand that if the defendant, while out of this district with permission of the court, flees or otherwise commits a breach of the bail bond conditions, you'll be subject to a civil judgment for the amount of the bail and all property that you posted with the court to secure the bail, and will be ordered, that will be ordered forfeited to the United States. Do you understand that?

Liotta:     Yes.

Judge:      And I have your permission to sign that as for you as well?

Liotta:     Yes.

Judge:      All right, then I will, um, order him released on the conditions, um, that we have described, Mr. Elvir, go ahead and sign that please?

Judge:      When you're done signing it, just hand that to the Marshall along with the Rule 5, ah, waiver form.

Judge:      Um, Miss, ah, Miss Liotta, will you give me a, um, an e-mail address, a good e-mail address for you, and I'm going to have my, ah, law clerk, ah, e-mail you a copy of this bond form so you have it all in front of you as well OK?

1:04:28 / 1:06:02

Liotta:          Sure, it's my first name ████████████████

Judge:          Just like on your screen?

Liotta:          Oh, yup.

Judge:          All right, what's next?

Pastor:         Your Honor, um, as I said at the outset, ah, the government respectfully requests
                a 24 hour stay of the Release Order to allow the charging district in Florida to
                appeal on the order to their District Judge… I understand that they intend to do
                so.

Judge:          All right, that's correct.

Pastor:         Thank you, your Honor.

Judge:          Ms. Falk,  you're on mute, I don't know if you're talking to me…or…

Falk:           Or myself. Um, ah, ah, Mr. Pastor I'll just call you off-line to try to do a…to have a
                discussion with the US Attorney's office in Florida.

Pastor:         OK.

Falk:           Ah, I'll do that in half an hour after I go beg Judge Briar for forgiveness.

Pastor:         All right.

Judge:          All right, anything further from the parties in this matter?

Liotta:          No, not on my side.

Falk:           No your Honor, thank you.

Pastor:         No your Honor.

Judge:          All right, thank you everyone – you guys are dismissed – have a good day.

1:06:09         Recording Ended

Fiorella Warger
Federally Certified Spanish Court Interpreter
15502 SW 74 PL
Palmetto Bay, FL 33157
Cell: (305) 510-3020
FiorellaWarger@bellsouth.net

May 16, 2023

To Whom It May Concern:

**TRANSCRIBER CERTIFICATION**

I hereby certify that I have transcribed, to the best of my knowledge and ability, the audio recording marked *Detention Hearing recording 5-10-23.m4a*, in the matter of U.S. v. Dominic Andre Elvir, Case # 22-CR-14048-AMC. The transcription consists of twenty-four pages.

I may be contacted at the above telephone number or email address, should additional information be required.

*Fiorella Warger*

Federally Certified Spanish Court Interpreter
Florida State Courts Cert. No. 10-00139